# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **D.L. and M.L.**

**No. 21-0702** (Wyoming County 17-JA-33 and 17-JA-43)

## MEMORANDUM DECISION

Petitioner Mother S.S., by counsel Lindsey Ashley Thompson, appeals the Circuit Court of Wyoming County's August 11, 2021, order terminating her parental rights to D.L. and M.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem, Sidney H. Bell, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first making an adjudicatory finding as to whether she abused and/or neglected the children and in failing to consider less-restrictive dispositional alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court erred in proceeding to disposition in regard to M.L. without properly adjudicating petitioner of abusing and/or neglecting that child. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to affirm, in part, and vacate and remand, in part, for further proceedings consistent with this decision.

The main issue in this case concerns the circuit court's adjudication of M.L. and is extremely narrow. On May 1, 2017, the DHHR filed an abuse and neglect petition related to D.L. only. That case was given a circuit court number of 17-JA-33. By order entered on June 7, 2017, the circuit court indicated that petitioner waived her right to a preliminary hearing. The order also scheduled an adjudicatory hearing for petitioner on July 13, 2017, "as agreed to by the parties and to which no objection was made."

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Just one day prior to the scheduled adjudicatory hearing, the DHHR filed an amended petition on July 12, 2017, after petitioner gave birth to M.L. The case concerning M.L. was given a circuit court number of 17-JA-43. On July 13, 2017, the court held a hearing that was at first explicitly related only to case 17-JA-33, as indicated in the transcript for the hearing. Although that case was originally scheduled as an adjudicatory hearing for petitioner, the resulting order referred to the hearing as a preliminary hearing. At the outset of the hearing, counsel for the DHHR explained that petitioner "has a stipulation to present to the [c]ourt, and we, if the [c]ourt finds that acceptable, do not object to the improvement period for the young lady." Petitioner's counsel confirmed this was accurate. Counsel for the DHHR then interjected, "Your Honor, there's another matter --," but the court interrupted as follows: "Just a moment. The [c]ourt is in receipt of a document which has been marked as exhibit number 1, which is captioned 'Stipulation in Abuse and Neglect' and is the affidavit of [petitioner]." The court then undertook limited questioning of petitioner about her stipulation, after which the court granted petitioner's request for a post-adjudicatory improvement period. Following this discussion, the court returned to counsel for the DHHR, who explained that "[a]pparently, there is a different matter involving [petitioner], [the father] and another child, whose name is [M.L.]." The court asked, "Is that 17-JA-43?" Counsel for the DHHR confirmed this was accurate and moved to consolidate those cases. The court then granted the motion to consolidate, and the cases proceeded together from that point. It should be noted, however, that petitioner's written stipulation contained only the 17-JA-33 numbered case, although the stipulation was not entered until July 19, 2017, several days following the hearing where it was submitted to the court. The written stipulation indicated that petitioner admitted to "drug use contained within the petition." Additionally, the resulting order from this hearing, entered on March 1, 2018, contained the circuit court numbers for both cases (17-JA-33 and 17-JA-43), although it did not make any reference to petitioner's stipulation. Instead, the March 1, 2018, order stated that petitioner waived her preliminary hearing and that "[a]n Adjudication Hearing for Respondent mother, [S.S.] . . . will be held before this Court on July 13, 2017, at 9 o'clock a.m." Confusingly, this is the same date that the preliminary hearing from which this order originated was held.

On July 31, 2017, the DHHR filed another amended petition alleging that petitioner previously stabbed the father. The DHHR further alleged that petitioner was not compliant with required services.

Relevant to the issue of adjudication on appeal, the court held a hearing in January of 2018, after which it entered its May 1, 2018, "Stipulated Adjudication Order, Order for Post-Adjudicatory Improvement Period for Respondent, [father], and Order Extending Post[-]Adjudicatory Improvement Period for Respondent, [petitioner]." The order contains extensive findings about the father's stipulation, the circumstance surrounding the father's submission of this stipulation, and accepting the same. The court also noted that the DHHR moved to extend petitioner's post-adjudicatory improvement period. The court found good cause for extending petitioner's improvement period and granted the motion. Ultimately, the order stated that "[i]t is, accordingly, ORDERED: . . . [t]hat under the laws of this State, the infant children, [D.L.] and [M.L.], are neglected children by the [r]espondent parents, [T.L.] and [petitioner]."

In August of 2018, the children were returned to the parents under a trial reunification. That trial reunification ended after a matter of days when the parents improperly transported the

young children without car seats and while the father, who did not have a driver's license, was operating the vehicle.

In May of 2019, the circuit court held a hearing on the DHHR's motion to revoke petitioner's improvement period. Petitioner did not attend the hearing, but was represented by counsel. Testimony from the hearing established that petitioner was not compliant with the case, having failed to submit to ordered drug screening, visits with the children, and multidisciplinary team ("MDT") meetings since August of 2018. In fact, a Child Protective Services ("CPS") worker testified that she had not seen petitioner at all since that time. The CPS worker also testified that petitioner was given multiple opportunities to submit to substance abuse treatment but refused to do so. Finding that petitioner was noncompliant with the terms of her improvement period, the court granted the motion and terminated petitioner's improvement period.

The following month, the DHHR filed a motion to terminate petitioner's parental rights. The DHHR cited the fact that the children had been in foster care for approximately two years, in addition to petitioner's almost total refusal to participate in the proceedings.

On July 8, 2021, the DHHR filed a second motion to terminate petitioner's parental rights, citing the fact that the children had been in foster care for four years. The motion largely contained the same allegations as the prior motion, although it did note that petitioner participated in substance abuse treatment for approximately seven months. However, the rehabilitation facility indicated that petitioner left "on her own." According to the DHHR, petitioner's whereabouts were unknown at the time the motion was filed. The same day the DHHR filed its motion, the guardian filed a report. According to the guardian, petitioner had not visited the children for two years. The guardian also asserted that petitioner had not appeared in the case for over two years. Further, the guardian alleged that at one point, petitioner told D.L.'s foster mother that she moved to Texas "and was starting life over there." According to the guardian, petitioner was then incarcerated in Texas before returning to West Virginia. Ultimately, the guardian recommended termination of petitioner's parental rights, given that she had "years to take advantage of services and improve the deficiencies that led to the filing of the petitions."

Despite granting the DHHR's motion to revoke petitioner's improvement period in May of 2019, the matter did not come on for a dispositional hearing until July of 2021. The DHHR presented testimony that petitioner had been noncompliant with services during this period. The court then found that petitioner made no effort to correct the deficiencies that led to the children's removal and failed to cooperate with the DHHR to regain custody of the children. Accordingly, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her rights was necessary for the children's welfare. The court then terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The father's parental rights were also terminated below. The permanency plan for the children is adoption in their current foster homes.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Additionally, we have explained that

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009).

On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first finding that she abused and/or neglected the children. This argument, however, misstates the record as it relates to D.L. As set forth above, petitioner stipulated to abusing and neglecting that child, and the circuit court entered an order in which it found that "the infant children, [D.L.] and [M.L.], are neglected children by the [r]espondent parents, [T.L.] and [petitioner]." As such, petitioner's argument that the court made no finding that she abused and neglected the children is without merit. Because the court properly accepted petitioner's voluntary stipulation concerning D.L. and found, albeit approximately one year after accepting the stipulation, that petitioner neglected D.L., petitioner is entitled to no relief in regard to that child.

However, the record concerning M.L. differs in critical ways. First, it is clear from the record that petitioner's written stipulation did not relate to M.L. as it lacked the circuit court number associated with M.L.'s case. The DHHR filed its amended petition concerning M.L. just one day prior to the hearing at which petitioner stipulated to neglecting D.L., and the stipulation was accepted *prior* to the court addressing consolidation of the two cases. As such, the record shows that petitioner intended to stipulate only to the allegations in the original petition as they related to D.L., and both the DHHR and the circuit court failed to clarify on the record whether that stipulation would extend to M.L. Further, because the circuit court proceeded as if petitioner had stipulated to neglecting both children, there was never a proper adjudicatory hearing for petitioner where the DHHR was required to prove, by clear and convincing evidence, that petitioner abused and/or neglected M.L. *See* W. Va. Code § 49-4-601(i) (requiring the circuit court

to determine "whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent," and that "[t]he findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence"). Accordingly, although the court ultimately found that petitioner neglected both children, this finding is erroneous in regard to M.L. because of the failure to hold the DHHR to the applicable burden of proof.

On appeal, the DHHR acknowledges that error occurred below by explicitly stating that "it is true the expected adjudication did not occur." Despite this admission, the DHHR nonetheless goes on to argue that this Court should affirm the termination of petitioner's parental rights because petitioner was aware her rights would be terminated if she did not comply with her improvement period, because she stipulated to her adjudication, and because the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions within a reasonable period of time. We are troubled by this argument, as it is almost identical to past arguments from the DHHR that this Court has roundly rejected.

This Court has repeatedly stressed that

> "before a court can begin to make any of the dispositional alternatives under W.Va.Code, [49-4-604], it must hold a hearing under W.Va.Code, [49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

Syl. Pt. 3, in part, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). In that case, the circuit court explicitly refused to find that the children had been abandoned by their father. *Id*. at 691, 827 S.E.2d at 833. Despite finding that the DHHR failed to satisfy its burden at adjudication, the court went on to terminate the father's parental rights to the child. *Id*. at 692, 827 S.E.2d at 834. On appeal, this Court vacated the termination for failure to comply with the direction from *T.C.* cited above. *Id*. at 695, 827 S.E.2d at 837. As in the matter currently on appeal, the DHHR advocated in *A.P.-1* for affirmation in the absence of an appropriate adjudication. We explained, however, that the

> DHHR's position—that a finding of abuse and neglect at an adjudicatory hearing is not a prerequisite to disposition—is untenable under the plain language of West Virginia Code §§ 49-4-601 and 49-4-604, as well as Syllabus Point 1 of our decision in *State v. T.C.*, decided more than thirty-five years ago.

*Id*. at 694, 827 S.E.2d at 836 (citation omitted). Despite clear direction that termination of parental rights in such circumstances is not appropriate, the DHHR again urges this Court to affirm the termination of petitioner's parental rights despite admitting that no appropriate adjudication took place. We refuse to do so. Indeed, "[o]ur insistence on procedural integrity in abuse and neglect cases is not hollow formality. Our statutes, cases, and rules mandate a two-phase approach in abuse and neglect proceedings to 'support[] the constitutional protections afforded to parents in permanent child removal cases.'" *Id*. at 695, 827 S.E.2d at 837 (citation omitted). Accordingly, we

must vacate, in part, the portion of the circuit court's August 11, 2021, order insomuch as it terminates petitioner's parental rights to M.L.

However, because petitioner was properly adjudicated in regard to D.L., we may turn to her assignment of error regarding termination of her parental rights, at least with respect to that child. It is unnecessary to belabor this argument for two reasons. First, petitioner predicates this argument on the alleged failure to make a finding of abuse and neglect, which is rebutted by the record. Second, petitioner cites to an alleged failure on the DHHR's part to remain in contact with her despite progress in her improvement period. However, petitioner points to circumstances that occurred in 2019, while the record shows that she did not make an appearance over the final two years of the proceedings. In short, the evidence overwhelmingly establishes that petitioner abandoned the proceedings and abdicated any responsibility for remedying the conditions of neglect to which she stipulated. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Clearly, petitioner's total abandonment of the proceedings satisfies this definition. As such, we find no error in the court's determination in this regard.

The court further found that the child's welfare required termination. According to West Virginia Code § 49-4-604(c)(6), a court may terminate a parent's parental rights upon these findings. We have also explained that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find that petitioner is entitled to no relief in regard to her assignment of error concerning termination of her parental rights to D.L.

Finally, we must address the extended delay in these proceedings. As noted above, the DHHR first moved to terminate petitioner's parental rights in June of 2019, at which point the children had already been in foster care for two years. It does not appear that any action was taken on this motion, such that the DHHR filed an almost identical motion in July of 2021, by which point the children had been in foster care for approximately four years. Simply put, it is unclear why the children were allowed to languish in foster care for two additional years when petitioner did not participate in the proceedings in any capacity during that period. We have stressed that "[c]hild abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. Pt. 1, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991). Additionally, we have explained that "[t]he time limitations and standards contained [in the various authorities governing abuse and neglect proceedings] are mandatory and may not be casually

disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority." *In re J.G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018). We must again stress that unnecessary procedural delays such as those evident from the record in this matter are inconsistent with the statutes and rules governing abuse and neglect proceedings and this Court's prior holdings. With that in mind, upon remand, the court is directed to ensure that further proceedings are not subject to such delays.

For the foregoing reasons, we affirm, in part, the circuit court's August 11, 2021, order terminating petitioner's parental rights insomuch as it relates to D.L.; vacate, in part, that same order as it relates to the termination of petitioner's parental rights to M.L.; and further remand the matter for additional proceedings concerning M.L., beginning with a properly noticed adjudicatory hearing, consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part. Vacated and remanded, in part, with direction.

**ISSUED**:  May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn